1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT FOR THE

7                    EASTERN DISTRICT OF CALIFORNIA

8

9    Ron J. Andersen; David F. Clemens;
     and Dan H. Bailey

10
                                        Case No. 2:11-cv-01795CMK
11
                     Plaintiffs,
12
                                           Memorandum of Decision
13                                                  and
                                                 JUDGMENT
14   Greg Echols; and Michael R.
     Logan

15
                     Defendants.
16   _____

17

18          This case came on regularly for trial on June 5, 2013,  at the United States District Court

19   in Redding, California, the Honorable Craig M. Kellison, United States Magistrate Judge,

20   presiding; the Plaintiffs Ron J. Andersen [Andersen], David F. Clemens [Clemens] and Dan H.

21   Bailey [Bailey] appeared, in propria persona; and the Defendant Greg Echols [Echols] also

22   appeared, in propria persona.  The Defendant Michael R. Logan [Logan] was not present at trial,

23   but did listen to the trial, via telephone, but did not otherwise participate.

24                              **BACKGROUND**

25          This case concerns a dispute over ownership of an unpatented mining claim located in

26   Butte County, California.  This actions proceeds on the original complaint (Doc.1).  Defendants

                                          1

1  have answered the complaint (Doc. 6 and 41) and all parties have consented to Magistrate Judge

2  jurisdiction. (Docs. 7, 8, 9, 40 and 42; see also order at doc. 43).

3      The disputed claim is located within the Lassen National Forest in the NW 1/4 of the SE

4  1/4 of Section 33, Township 25 N, Range 4 E, of the Mount Diablo Meridian, (Butte County Tax

5  Parcel No. 865-000-455-000).   In 1993 the claim was first located by Jon E. von Heim [von

6  Heim] and plaintiff Andersen.  The placer claim consisted of approximately 40 acres and was

7  named the Stringer Mine [the Stringer].  Exh. 1.

8      In 2004, von Heim transferred his one-half interest in the Stringer to plaintiff Clemens.

9  Exh's.  3 and 4.  In 2010, plaintiff Bailey was added as a partner to the Stringer.  Since the

10  mine's location in 1993 it has been properly registered with the Bureau of Land Management

11  [BLM] (CAMC259489) and all required fees have been paid.   The Stringer remains in good

12  standing and has never been the subject of suspension, abandonment or revocation.

13      In 2009, defendant Echols and a third party by the name of Donna Durr [Durr] recorded  a

14  mining claim location notice in Butte County, California over the same location as the Stringer.

15  Exh. 8.  The new mining claim of Echols and Durr was referred to as the Stimulus Mine [the

16  Stimulus #1].

17      Shortly after Echols and Durr recorded the Stimulus #1 over the plaintiffs' Stringer,

18  plaintiff Bailey contacted Echols and threatened litigation if the Stimulus #1 was not abandoned.

19  In September 2009, Echols and Durr recorded a Notice of Abandonment to the Stimulus #1.

20  Exh. 9.

21      Within a month of the abandonment of the Stimulus #1, however, Echols and defendant

22  Logan recorded a new mining claim on the same location as the Stringer and Stimulus #1, but

23  this filing was designated as a lode claim and referred to as the Stimulus Lode Mine [Stimulus

24  Lode].  Exh. 7.

25      When the plaintiffs became unsuccessful in having Echols and Logan informally abandon

26  the Stimulus Lode,  they filed the present action in July 2011 seeking to quiet title to the Stringer,

1   injunctive relief and damages.

2       During the course of this litigation Echols and a new third party entity referred to as

3   Infinite Light Investment, LLC. [Infinite Light][1] again filed a new placer claim over the Stringer,

4   this time referring to the latter claim as the Stimulus Mine #2 [Stimulus #2].

5                                        **STANDARDS**

6       Under the General Mining Law of 1872,  as amended (30 U.S.C. §§ 21-54), citizens of

7   the United States are provided the opportunity to explore for, discover, and purchase certain

8   valuable mineral deposits on guidelines for "claiming" the mineral rights to minerals so

9   "discovered."  Provisions are included to allow for local rules to be developed, consistent with

10  Federal laws.  The State of California established the manner of locating mining claims, tunnel

11  sites, and mill sites on public lands under the California Public Resources Code (Cal. Pub. Res.

12  Code §§ 3901 - 3924).  The power over the disposition of federal land and the minerals contained

13  therein is in Congress and not in the states.  Belk v. Meagher, 104 U.S. 279, 281-283 (1881).

14  Congress has provided that, unless otherwise withdrawn, all valuable mineral deposits in lands

15  belonging to the United States are free and open to exploration and purchase, and the lands in

16  which they are found to occupation and purchase, by citizens of the United States and those who

17  have declared their intention to become citizens. 30 U.S.C. § 22.  Certain requirements for the

18  establishment and maintenance of mining claims have been set forth by Congress (e.g., 30

19  U.S.C.) but federal legislation has traditionally left much regulation to the states and to local

20  customs or rules of the miners of a mining district.   30 U.S.C. § 26; Cal. Pub. Res. Code §§ 3901

21  - 3924.

22      There are two types of mining claims which may be made, "lode" claims and "placer"

23  claims.  "Lode claims embrace one or more continuous veins, lodes, or ledges of mineral lying

[1]   At time of trial, an individual who identified himself as Victor Thomas indicated that he was a principal in Investment Light.  He asked to be seated at the defense table with Echols and assisted him during the course of the trial.

3

1   within well-defined seams or fissures in the surrounding rock, within boundaries clearly

2   separating it from the neighboring rock, often deep within the bowels of the earth."  53A

3   Am.Jur.2d., <u>Mines and Minerals</u>, § 19 (2013).   "A placer claim is one where the valuable

4   mineral is not found in veins, lodes, or ledges within the rock, but in a loose condition in the

5   softer materials that cover the surface of the earth." 30 U.S.C. § 23; Cal. Pub. Res. Code § 3901;

6   43 C.F.R. § 3863.1.   A lode claim is limited by reference to its course, while a placer claim may

7   not exceed 20 acres for each individual claimant.  30 U.S.C. §§ 23, 35; 43 C.F.R. § 3862.1-1.

8       In mining terms, "location" refers to the acts required to stake a claim to mineral bearing

9   property.  It requires that the boundaries of the claim be marked upon the ground, that the locator

10   take possession and work on the ground, that the claim be recorded, and the performance of

11   whatever else is mandated by the acts of Congress and by local laws and regulations.   <u>Creede &</u>

12   <u>C.C.M. & M. Co. v. Uinta T.M. & T. Co.</u>, (1905) 196 U.S. 337, 346.   Discovery of valuable

13   minerals on the claim is necessary to perfect the claim, but discovery need not precede the other

14   acts of location.  <u>Id.</u>  After a claim is perfected, a miner must perform at least $100 worth of

15   labor or improvements tending to develop the property each year or the claim will be open to

16   other prospectors until such time as work is resumed.  30 U.S.C. § 28; Cal. Pub. Res. Code §

17   3912.  The period for performance of annual development work runs from September 1st to

18   September 1st each year commencing with the September 1st that follows the date of initial

19   location of a claim.  <u>Id.</u>

20       When a miner has perfected a location of a mining claim, and while he or she continues

21   to perform the required annual development work on the claim, the miner is entitled to the

22   exclusive right of possession and enjoyment of all the surface included within the borders of the

23   location for so long as he or she complies with all of the laws of the United States and with the

24   state, territorial or local regulations not in conflict with the laws of the United States. 30 U.S.C. §

25   26.  An attempted location upon lands which are already covered by a valid and existing location

26   of another is void.  <u>Schaub v. United States</u>, 207 F.2d 325 (9th Cir. 1953); <u>Osborne v. Hammit</u>,

4

1   377 F.Supp. 977 ( D. Nev. 1964).  Where, however, the location is abandoned by the locator or is

2   forfeited for the failure to comply with legal prerequisites for locating and maintaining a claim,

3   then any other person may relocate the claim in the same manner as is required of an original

4   locator.  Cal. Pub. Res. Code § 3903.

5       State law provides that within 90 days of posting his or her notice of location upon a

6   claim, the locator shall record, in the office of the county recorder of the county in which the

7   claim is situated, a true copy of the notice together with a statement by the locator containing

8   certain information.  Cal. Pub. Res. Code § 3911.  Recordation of the notice serves as

9   constructive notice to other prospectors, but a failure to record with the county recorder does not

10  work a forfeiture and persons with actual knowledge of the claim cannot take advantage of the

11  failure to record.  Yosemite Mining Co. v.  Emerson, (1908) 208 U.S. 30 25, 30;  Last Chance

12  Mining Co. v. Bunker Hill Mining Co., 131 Fed. 579,  586 (9th Cir. 1904).  State law also

13  requires the recordation of an affidavit of the performance of labor and improvements within 30

14  days of the time limited by law for the performance of such work. Cal. Pub. Res. Code § 3913(a).

15  Timely recordation of the affidavit serves as prima facie proof of the performance of the work

16  stated in the affidavit.  Cal. Pub. Res. Code § 3913(b).  A failure to record the affidavit timely

17  creates a prima facie presumption of the act and intent of the owner to abandon the claim at the

18  end of the assessment year in which the work should have been done and imposes upon the

19  owner the burden of proof of showing that the work was performed in any contest, suit or

20  proceeding touching the title to the claim.  Cal. Pub. Res. Code § 3913(c).  But, under state law,

21  the failure to record the affidavit does not work a forfeiture of the claim if the owner proves that

22  he or she in fact performed the requisite annual work.  Hickel v. Oil Shale Corp., (1970) 400 U.S.

23  48, 53;  Tosco Corp. v. Hodel, 611 F.Supp. 1130 (D. Colo. 1985).

24      In 1976,  the Federal Land Policy and Management Act (FLPMA) was enacted by

25  Congress in an attempt to solve the problem of dormant unpatented mining claims. This act

26  created a federal repository, describing where, when, and by whom mining claims had been

5

located.  <u>Topaz Beryllium Co. v. United States</u>, 479 F.Supp. 309, 312 (D. Utah 1979).  The act so

requires owners of mining claims to file, before specific deadlines, notices of mining claims and

annual statements showing continued interest in the mining claims. 43 U.S.C. § 1744.[2]

Section 1744(b) requires the owner of an unpatented mining claim to file with the BLM,

within 90 days of locating the claim, a copy of the official notice of the location or certificate of

location. Thereafter, commencing in the year following the calendar year in which the claim was

located, the owner is required to file with state officials and with the BLM, prior to December 31,

a notice of intention to hold the claim, an affidavit of assessment work performed on the claim,

or a detailed reporting form.  43 U.S.C. § 1744(a).  In 1992, Congress passed appropriations

legislation for the Interior Department, which substituted a $100 per claim 'maintenance fee' for

the $100 of assessment work requirement.  Section 1744(c) provides that a failure to file the

---

[2]  Section 314 of the Federal Land Policy and Management Act of 1976 (43 U.S.C. § 1744), provides:
"(a) Filing requirements
"The owner of an unpatented lode or placer mining claim located prior to October 21, 1976, shall, within the three-year period following October 21, 1976, and prior to December 31 of each year thereafter, file the instruments required by paragraphs (1) and (2) of this subsection. The owner of an unpatented lode or placer mining claim located after October 21, 1976 shall, prior to December 31 of each year following the calendar year in which the said claim was located, file the instruments required by paragraphs (1) and (2) of this subsection:
"(1) File for record in the office where the location notice or certificate is recorded either a notice of intention to hold the mining claim (including but not limited to such notices as are provided by law to be filed when there has been a suspension or deferment of annual assessment work), an affidavit of assessment work performed thereon, or a detailed report provided by section 28–1 of Title 30, relating thereto.
"(2) File in the office of the Bureau designated by the Secretary a copy of the official record of the instrument filed or recorded pursuant to paragraph (1) of this subsection, including a description of the location of the mining claim sufficient to locate the claimed lands on the ground.
"(b) Additional filing requirements
"The owner of an unpatented lode or placer mining claim or mill or tunnel site located prior to October 21, 1976 shall, with the three-year period following October 21, 1976, file in the office of the Bureau designated by the Secretary a copy of the official record of the notice of location or certificate of location, including a description of the location of the mining claim or mill or tunnel site sufficient to locate the claimed lands on the ground. The owner of an unpatented lode or placer mining claim or mill or tunnel site located after October 21, 1976 shall, within ninety days after the date of location of such claim, file in the office of the Bureau designated by the Secretary a copy of the official record of the notice of location or certificate of location, including a description of the location of the mining claim or mill or tunnel site sufficient to locate the claimed lands on the ground.  "(d) Validity of claims, waiver of assessment, etc., as unaffected  "Such recordation or application by itself shall not render valid any claim which would not be otherwise valid under applicable law.  Nothing in this section shall be construed as a waiver of the assessment and other requirements of such law."

6

1   required instruments "shall be deemed conclusively to constitute an abandonment of the mining

2   claim . . . by the owner . . . ."  In United States v. Locke, supra at 97–102, the Supreme Court

3   held that full and timely compliance with these provisions is required for preservation of a

4   mining claim and that failure to comply works a forfeiture of the claim. Thus, intent to abandon

5   is irrelevant and the claim is lost.  Kunkes v. United States, 78 F.3d 1549, 1551 (D.C. Cir. 1996).

6                                              **ANALYSIS**

7           At trial, plaintiffs established that the Stringer was properly located in 1993 and that all

8   subsequent required filings and recordings with the State of California and the BLM have been

9   timely made.  Ex's. 1-6; and B - M.  The Stringer is in good standing and has not been the

10  subject of revocation, penalties or forfeiture.

11          Echols testified that he first became involved with the Stringer when he was a teen.  He

12  testified that he assisted von Heim in filling out the original notice of location in 1993.

13  Apparently convinced of the economic potential of the Stringer, Echols and Durr jumped the

14  Stringer in January 2009, by filing their own claim.  Exh. 8.  Plaintiff Bailey became a partner in

15  the Stringer in December 2010.  Exh. 5.  As a result of threatened litigation by plaintiffs, Echols

16  and Durr filed a Notice of Abandonment to the Stimulus #1.  Exh. 9.  During this period of time,

17  Echols also asked Bailey to be added as a partner in the Stringer in light of his self-proclaimed

18  knowledge and experience in the Stringer history and potential.  On cross-examination, however,

19  Echols  refused to answer questions posed by either the plaintiffs or the court concerning his

20  knowledge of the Stringer.  When the court again attempted to question Echols regarding the

21  Stringer, Echols laughed and responded by stating that "cherries and tomatoes grow there, da, da,

22  da, . . . ."

23          When plaintiffs declined Echols' offer to be added as a Stringer partner, he initiated a

24  search of the records involving the Stringer in the Butte County Recorder's office and the BLM

25  California state office in hope of finding potential errors or irregularities that he could utilize to

26  challenge the Stringer's validity.

1    In October 2009, defendants filed for the Stimulus Lode.  Exh. 7.  Despite having

2  knowledge that he was jumping the plaintiffs' Stringer,  Echols testified that he made no effort to

3  contact them concerning his discovery work and the filing of the Stimulus Lode.  The court also

4  found Echols' testimony concerning his discovery of a "vein or lode" convenient, but dubious.

5  See, 30 U.S.C. § 23.  As with the filing of the Stimulus #1 and Stimulus #2 claims (Ex's. 8 and

6  11),  Echols simply proceeded on his unfounded notion that the Stringer was forfeited or

7  abandoned by operation of law.

8    In Clipper Mining Company v. Eli Mining and Land Company, (1904) 194 US 220,

9  224-225, the Supreme Court held that a person has no right to enter upon a valid placer mining

10  claim to search for, or locate a lode claim without the express permission of the placer mining

11  claimant.  Lode prospectors may not interfere with the mining operation of the placer mining

12  claimant.  Since the plaintiffs' title to the Stringer mine was neither forfeited or abandoned at the

13  time of defendants' alleged discovery, and the trespass not waived, the defendants'

14  Stimulus Lode claim is void.  Id.  See also, United States v. 237.500 Acres of Land, More or

15  Less, Counties of Inyo and Kern, State of California., 278 F.2d 584, 586 (9th Cir. 1960).

16    Echols' approach at trial concerning his version of the present status of the Stringer mine

17  appeared to be in the form of a scattergun attack.  Oblique, at best, his assertion of ownership of

18  the Stimulus Lode and Stimulus #2 is apparently premised on the notion that at some point in

19  time between the years 1993 and 2011, plaintiffs most likely neglected to perform one, or more,

20  required acts that resulted in the abandonment or forfeiture of the Stringer.

21    Echols testified that several specific events throughout the years resulted in the forfeiture

22  of the Stringer.  He speculated that the transfer from von Heim to Clemons in 2004  (Exh. 3) of

23  an undivided one-half interest in the Stringer might have been forged.  Echols suggested that von

24  Heim had possibly died or moved away at the time of the deeds' execution.  Since the quitclaim

25  deeds (Ex's. 3and 4) from von Heim to Clemons were notarized, this court would have to

26  conclude that the attestations clauses by the notary public were false, a leap this court is not

1    inclined to do.  (Fed.  R. Evid. 902(2) provides for self-authentication).

2        Echols also suggests that the original quitclaim deed was not initially accepted by the

3    Butte County Recorder in a timely manner, and required revision and the resubmission of an

4    amended deed.  Ex. 4.  These events are curable, however, and do not result in forfeiture.  43

5    C.F.R. § 3833.91.   Similarly, throughout the trial, Echols appeared to be under the illusion that if

6    the deed failed from von Heim to Clemens, for whatever reason, that he was in a position to

7    benefit from the failed transfer.  Section 3833.92 simply provides that a failed transfer will not be

8    recognized by the BLM until cured.  It does not result in an immediate forfeiture as proffered by

9    Echols.  Neither von Heim or any current owner of the Stringer has ever challenged the

10   ownership interest of Clemens.  If the transfer from von Heim to Clemens was void, or voidable,

11   for whatever reason, the validity of the Stringer has not been affected and Echols was never in a

12   position to 'dibs' the interest of Clemens.   Section 3833.92.

13        Next, Echols suggests that the failure by von Heim to specifically mention the Stringer

14   Mine, by name, in the body of the two quitclaim deeds to Clemens also resulted in the forfeiture

15   of the Stringer.  Ex.'s 3 and 4.   California law does not impose such a requirement.  Cal. Pub.

16   Res. Code § 3945.  Furthermore, such an omission under federal law is also subject to cure. See

17   43 C.F.R. §§ 3833.32(b)(1) and 3833.91.  The court further finds that both of the quitclaim deeds

18   adequately set forth the proper legal description, county tax parcel number and the BLM CAMC

19   number.  § 3833.32(b).

20        Noteworthy to defendants' challenges to the von Heim to Clemens quitclaim deeds is the

21   fact that these deeds were executed in 2004.  Echols then waited over five years to jump the

22   Stringer with his Stimulus #1 claim in January 2009 and then another 11 months to file his

23   Stimulus Lode claim with yet, a new partner.[3]

24

25        [3]  Donna Durr was Echols' partner on the Stimulus #1 filed in early 2009.  Defendant Michael Logan was Echols'
     partner in the Stilumus Lode filing in late 2009.  In 2012, Infinite Light (Victor Thomas) was Echols' partner in the Stimulus #2.

26   None of these individuals testified at trial, and the court speculates that they were lured into these schemes by Echols upon the
     same false beliefs and assurances that were espoused at trial.

Almost a decade after the alleged defective von Heim transfers, Echols filed his Stimulus #2 claim. Even if a defect in the original von Heim transfer to Clemens somehow existed, it was cured long before Echols began his quest to take control and ownership of the Stringer claim. 43 C.F.R. §§ 3833.91 and 3833.92.

During closing argument, it became apparent to the court that many of Echols' misconceptions concerning the legality of his actions stemmed from his reliance upon a BLM informational manual entitled "Location and Patenting of Mining Claims and Mill Sites in California."[4] Unfortunately, Echols' selective interpretation that every minor error discovered in the mining claim paper trail results in automatic forfeiture is not the law. In essence the manual is not the law, but simply a guide to the lay miner. See, Porras v. Montefiore Medical Center, 742 F.Supp 120, 122 (S.D.N.Y. 1990).

Echols next attempted to portray the partnership status of Andersen, Clemens and Bailey as something less than legally acceptable. He suggests that Bailey was added as a partner only to offer legal assistance to Andersen and Clemens in the prosecution of this case. Bailey was added on as a partner in the Stringer in 2010 (Ex. 5), and the court received no evidence to question the validity of the transfer. Again, even if the court were to find irregularities in the transfer of a partnership interest in the Stringer from Andersen and Clemens to Bailey, such a defect would not inure to the benefit of Echols. Cal. Pub. Res. Code § 3945. 43 C.F.R. § 3833.30.

Finally, it appears that the "Hail Mary" offered by Echols is that if no one of the challenges discussed above, is sufficient standing alone to result in abandonment or forfeiture of the Stringer, then taken together this court should conclude that the "the whole (of defendants' claims of ownership) is greater than the sum of its parts." See, e.g. Briley v. Bass, 584 F.Supp.

---

[4] J.R. Evans, *Location and Patenting of Mining Claims and Mill Sites in California*, Bureau of Land Management (2006).

807 (D. Va. 1984).  This, the court declines to do.

The plaintiffs seek damages and to enjoin defendants from further acts of trespass. Although, the court did receive some evidence concerning the trespass by Echols and that the mine site had been disturbed by parties other than plaintiffs, it is unable to conclude that plaintiffs suffered actual compensable damages, or that the defendants were responsible therefore.  The court acknowledges that all parties appeared in propria  persona, and that plaintiffs simply did not provide sufficient evidence to support an award of damages other than nominal.

As an observation, the court notes that plaintiffs did not request punitive damages in its complaint.  It is clear that defendants acts were less than noble and appeared driven by "evil motive and intent."  See, Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005).

## CONCLUSION

The defendants are claim jumpers.[5]  Echols wanted the Stringer claim and initially filed the Stimulus #1 claim on January 9, 2009.  When confronted with the threat of litigation by plaintiffs, he abandoned the claim on August 26, 2009.  He then asked one of the plaintiffs to be added as a partner in exchange for sharing information he had acquired over time about the Stringer.   Plaintiffs declined to make Echols a partner.  With a new partner, Echols filed the Stimulus Lode claim over plaintiffs' Stringer on November 2009.  Plaintiffs were never notified of defendants' activities on the Stringer that led to the lode filing.  Plaintiffs filed the present action on July 8, 2011.  Defendants then filed a new placer claim over the Stringer (Stimulus #2) on April 4, 2012.

Plaintiffs' Stringer was properly located, and all annual filings and fees have been made. The Stringer has never been abandoned or forfeited.

Defendants had no justification, or legal cause, to jump the Stringer.

---

[5]    One who illegally occupies property to which another has a legal claim.  A supplanter, usurper - one who wrongfully or illegally seizes and holds the place of another.

**NOW, THEREFORE, IT IS ADJUDGED, AND DECREED that:**

1.  As of July 8, 2011, Plaintiffs Ron J. Andersen, David F. Clemens and Dan H. Bailey were, and currently are the owners of that certain mining claim known as the Stringer Mine, BLM Case No: CAMC 259489, located within the Lassen National Forest in the NW 1/4 of the SE 1/4 of Section 33, Township 25 N, Range 4 E, of the Mount Diablo Meridian, (Butte Country Tax Parcel No. 865-000-455-000), consisting of approximately 40 acres, more or less.

2. Defendants Greg Echols and Michael R. Logan have no right, title, estate, interest, or lien, whatever in any mining claim, including, but not limited to the Stringer Mining Claim, Stimulus #1 Mining Claim, the Stimulus Lode Claim and the Stimulus #2 Mining Claim, or in any mining claim located within the Lassen National Forest in the NW 1/4 of the SE 1/4 of Section 33, Township 25 N, Range 4 E, of the Mount Diablo Meridian, (Butte Country Tax Parcel No. 865-000-455-000), consisting of approximately 40 acres, more or less.

3. The Mining Claims referred to as the Stimulus Lode Claim recorded in Butte County, California on November 16, 2009 (Doc. 2009-0041725)(BLM-CAMC0295839) and the Stimulus #2 Placer Mining Claim recorded in Butte County, California on April 4, 2012 (Doc. 2012-0012013) are void.

4. Plaintiffs are awarded nominal damages in the sum of one ($1.00) dollars.

5. Defendants,  and each of them, and their officers, agents, employees, representatives, and all persons acting in concert or participating with them, are permanently enjoined and restrained from engaging in, committing, or performing, directly or indirectly, by an means whatsoever, and of the following acts:

A.  Entering the Lassen National Forest in the NW 1/4 of the SE 1/4 of Section 33, Township 25 N, Range 4 E, of the Mount Diablo Meridian, (Butte Country Tax Parcel No. 865-000-455-000), consisting of approximately 40 acres, more or less, for any type of mining activity or exploration.

1    B.  Interfering, or obstructing, in any fashion, with Plaintiffs' operation of the Stringer

2    Mine, or other mining activities within the Lassen National Forest in the NW 1/4 of the SE 1/4 of

3    Section 33, Township 25 N, Range 4 E, of the Mount Diablo Meridian, (Butte Country Tax

4    Parcel No. 865-000-455-000), consisting of approximately 40 acres, more or less.

5    C.  The court reserves jurisdiction to modify this injunction as the ends of justice may

6    require.

7    6.  Plaintiffs do have and recover their costs from Defendants.

8

9    DATED:  July 24, 2013

10

11   **CRAIG M. KELLISON**
     UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26